**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 12, 2007**

_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| CATHY MARIE SPENCE, | § | CASE NO. 05-12968-CAG |
|     Debtor. | § | Chapter 13 |

### ORDER GRANTING CHAPTER 13 TRUSTEE'S MOTION TO EXAMINE FEES

Before the Court is the Chapter 13 Trustee's Motion to Examine Fees filed July 13, 2007 (Docket no. 73). This motion was filed in response to the attorney's fees disclosed to be paid to Debtor's counsel as set forth in the Debtor's Supplemental Statement Pursuant to 11 U.S.C. § 329(a), FRBP 2016(b) filed May 29, 2007 (Docket no. 65). On October 18, 2007, the Court conducted a hearing on these pleadings. After considering the pleadings and evidence presented by counsel, the Court took this matter under advisement. On December 6, 2007 (Doc. #83), the Court issued an order on the substance of the issues presented, however, the order incorrectly referenced the pleadings that had been taken under advisement. An order vacating the December 6th order has been issued. Additionally, in the interim, on December 7, 2007, the Debtor voluntarily converted her

1

bankruptcy case from a Chapter 13 to a Chapter 7 case and on December 6, 2007, she voluntarily dismissed her pending adversary proceeding (Cause No. 07-1106) for which some of the attorney's fees stated in the Debtor's supplemental fee disclosure might have been used.

The Court finds that this it has subject jurisdiction over this matter under 28 U.S.C. §157 and §1334 and that this matter is a core proceeding as defined under §157(a)(b)(2)(A)(matters concerning the administration of the estate). For the reasons stated herein, the Court finds that the Trustee's Motion should be **GRANTED**.

## PROCEDURAL HISTORY AND FACTS

The Debtor, Cathy Marie Spence, filed a Chapter 13 petition on May 24, 2005. On January 18, 2006, Ameriquest Mortgage Company (Ameriquest), the loan servicer for the Debtor's Texas home equity note, filed a motion to lift stay for unpaid post-petition mortgage payments. (Docket no. 27). An Order Conditioning Automatic Stay was entered on February 14, 2006, which provided in relevant part that the Debtor was to make payments outside the Chapter 13 Plan to cure the delinquent post-petition mortgage payments and to allow Ameriquest to pursue its state law remedies should the Debtor not comply with the terms of the Agreed Order. (Docket no. 33). Debtor's Chapter 13 Amended Plan was then confirmed on June 27, 2006. (Docket no. 47). On November 21, 2006, Ameriquest filed a Notice of Termination of Automatic Stay Due to Failure to Cure Default. (Docket no. 53). Although the Notice did not specifically state the basis for the default, it seems clear from the record at the hearing that the Debtor did not make payments in accordance with the terms of the Agreed Order Conditioning Automatic Stay.

Thereafter on May 16, 2007, the Debtor filed a motion to modify her Chapter 13 Plan because she had a change in her employment and because she was no longer making her mortgage

payments to Ameriquest. (Docket no. 56). In addition, the Debtor also provided in her amended Schedule B that she now had a potential claim against Ameriquest for violations of Article XVI, §50(a)(6) of the Texas Constitution in that the lender had not complied with the requirements of the Texas Constitution for home equity loans. (Docket no. 61). The purported amount of Debtor's claim against Ameriquest includes the forfeiture of the original principal amount of the home equity loan, interest payments made on the home equity loan, and attorney's fees for filing suit to contest the validity of the home equity loan and lien. This claim was listed in the amount of $78,800.00 which is the amount the Debtor borrowed under the Texas home equity note.

In addition, Debtor's counsel filed the "Supplemental Statement Pursuant to 11 U.S.C. § 329(a), FRPB 2016(b)" wherein Debtor's counsel disclosed that the Debtor and counsel had entered into a contract in which the Debtor agreed to pay counsel the total sum of $4,000.00 with an initial amount of $1,000.00 having been paid. (Docket no. 65). The supplemental statement regarding the contract for legal services indicates that Debtor's counsel was to examine if there were potential violations by Ameriquest of the Texas Constitution regarding the refinancing of the Debtor's original note on her homestead and to negotiate a settlement of Debtor's claim against the note holder prior to the filing of an adversary proceeding to contest the validity of the note and lien. Further, the $4,000.00 fee included the drafting and delivery of any statutory notices that were conditions precedent to the filing of a judicial proceeding. The Debtor and her attorney refer to the work for which the Debtor will pay $4,000 as the "limited scope contract."

The proposed fee arrangement between Debtor and her counsel did not include the filing and prosecution of any judicial proceeding to contest Ameriquest's note and lien under the Texas Constitution for violations of Article XVI, § 50 of the Texas Constitution. As such, there would be

a further fee arrangement between Debtor and her counsel covering any litigation against Ameriquest. Also, any unused portion of the $4,000.00 fee paid to counsel would be credited against fees incurred in a lawsuit filed against Ameriquest. The source of the payment of the $4,000.00 fee arrangement would be the monthly mortgage payments that Debtor would have made to Ameriquest but for the fact that the stay had been lifted and the note accelerated, and as such, the lender was purportedly not accepting any more mortgage payments from the Debtor.

As noted above, the $4,000 fee amount was not to cover the filing of a lawsuit against Ameriquest in which the loan secured by Debtor's exempt homestead was made the basis of relief but was only for the limited basis of investigating the existence of claims and negotiating a possible settlement. This may or may not have occurred, but the adversary proceeding No. 07-1106 asserting such claims did get filed. Also, as noted above, the Debtor filed a stipulation of dismissal in this suit prior to answer by the defendant.

As a result of the forgoing, the Chapter 13 Trustee filed the subject motion to examine fees in which the Trustee argued that the fees Debtor's counsel may have received in connection with the representation of Debtor against Ameriquest may be excessive or inappropriate in light of the services performed and results obtained as outlined in ***In re First Colonial Corp.***, 544 F.2d 1291 (5th Cir. 1997). In response, the Debtor's counsel acknowledged that the representation of Debtor in the context of challenging the validity of home equity practices in Texas is a new form of litigation. Further, Debtor's counsel argued that contingent fee arrangements for home equity litigation are appropriate because it is a new area of litigation, particularly in bankruptcy court.

THE PARTIES' CONTENTIONS

At the hearing, the parties noted that there were two components to the Debtor's litigation

against Ameriquest that were raised in the context of an adversary proceeding that included: (1) money damages in the form of the lender forfeiting all principal and interest payments made since the home equity loan was executed, and a recovery on the amount financed under the home equity loan; and (2) a determination that the Ameriquest lien was invalid for failure to comply withe the Texas home equity statute. The parties noted that the claim for the recovery of money was a claim that belongs to the Chapter 13 estate and should be pursued by the Chapter 13 Trustee. Further, challenging the validity of Ameriquest's lien is a cause of action that belongs to the Debtor.

As such, the Chapter 13 Trustee challenged the propriety of the fee arrangement noting that any fee award regarding the litigation with the lender should be paid after the work was completed and the Chapter 13 Trustee had the opportunity to evaluate the level of the services provided, the results obtained, and the benefit to the estate. Further, the Trustee correctly noted that the fees being paid to Debtor's counsel in lieu of the mortgage payments were clearly property of the estate and arguably should be used for payment to unsecured creditors. *See* 11 U.S.C. § 1306(a)(2). Moreover, by paying the money directly to Debtor's counsel as opposed to the Chapter 13 Trustee, the Trustee had lost control over income that was property of the estate. During argument, Debtor's counsel conceded that payments earmarked for attorney's fees could be paid to the Trustee in escrow until any litigation or settlement negotiations were fully resolved. Finally, the Trustee noted that the Debtor's counsel should be paid after work was completed, similar to the fee award process in Chapter 11 cases and how special counsel is paid for specific types of litigation.

Debtor's counsel had filed the supplemental disclosure of fees in part to obtain guidance from the Court on how home equity litigation fees might be awarded in relation to the litigation in bankruptcy court. As such, because home equity litigation in Texas (and in bankruptcy courts) is

5

new, there is a degree of risk associated with such representation. Moreover, Debtor's counsel suggested that by allowing the Debtor to fund litigation through the allocation of mortgage payments to the litigation would not burden the estate further and provide counsel with the ability to fund litigation expenses.

## ANALYSIS AND DISCUSSION

Section 330(a)(4)(B) of the Bankruptcy Code provides for reasonable compensation to a debtor's attorney representing the interests of the debtor in connection with the bankruptcy case. As such, the court must determine the amount of the reasonable compensation and the benefit and the necessity of the services to the debtor as other factors set forth in §330. *See also* **Lamie v. United States Trustee**, 540 U.S. 526 (2004)(specifically finding that Chapter 13 debtor's attorneys are awarded fees under §330(a)(4)(B) rather than §330(a)(1)). In the context of a Chapter 13 case, the Austin Division has a Standing Order (dated March 1, 2007) in place that addresses most, but not all, fee arrangements in Chapter 13. The Standing Order Relating to Attorney Fees in Chapter 13 Cases in Austin provides for a fee arrangement in non-business cases that awards fees on a flat basis dependent upon if the case is successfully confirmed on the first confirmation setting or thereafter. In addition, the Austin Standing Order provides for specific types of services that are to be included in this benchmark fee. Further, the Austin Standing Order does allow debtor's counsel to request additional fees for cause shown. The Standing Order does not contain any provision regarding the type of fee arrangement in this case. That said, the Standing Order does state that "an attorney in a Chapter 13 case may only request and obtain an award of fees for additional services beyond those specified ... [in the Standing Order] on motion, notice and hearing." Further, the Standing Order states that "such request may be by separate application <u>following the conclusion of the matter for</u>

6

<u>which fees are requested</u>, ...."

Based on the foregoing, the Court denies the requested relief. As an initial matter, the Court noted at hearing that the Debtor was not only not making her mortgage payments, but the Debtor was not escrowing for insurance and property taxes. As such, the subject property was being impressed with property tax lien(s) and was subject to serious diminution of value should the subject property be destroyed or damaged. This omission due to the proposed fee arrangement makes the requested relief untenable. The local Standing Order suggests that additional attorney's fees are to be paid after the work is completed. Further, as noted herein, there are two causes of action of which one is within the control and discretion of the Chapter 13 Trustee. The record does not reflect if Debtor's counsel sought or requested from the Trustee authority to act for the estate. The Court also finds that in the future it may be prudent for counsel to obtain the Trustee's consent to bring actions under the Texas home equity statute that arguably contain a cause of action that the Chapter 13 Trustee controls. In addition, it is unclear if the Trustee has any right to approve or disapprove any settlement of monetary damages absent a motion to compromise under Fed. R. Bankr. Proc. 9019.

Moreover, as noted herein, the Court does not believe it appropriate for a debtor to be directed to submit money that is property of the estate to a counsel's trust account. At a minimum, the money should be directed to the Chapter 13 Trustee so that it may be accounted for and remitted directly to unsecured creditors should the litigation be unsuccessful. Finally, the stated basis of the fee arrangement is on a contingency basis, yet the fees for the litigation are being paid to Debtor's counsel on a monthly basis prior to the litigation being concluded. In essence, the proposed fee arrangement is a modified retainer that Debtor's counsel can directly draw upon for fees and expenses. The Court finds that, generally, professional fees are awarded after the work is complete

and the Court and parties in interest have an opportunity to evaluate the results obtained. The Court is not persuaded that it should deviate from this practice for home equity litigation. Accordingly, Trustee's Motion to Examine Fees is GRANTED to the extent that the Debtor's agreement with her attorney regarding their "limited scope contract" is denied.

###